CARLTON, J.,
dissenting:
¶38. I respectfully dissent from the majority’s opinion. Because I believe that a disputed issue of material fact exists as to the purpose, scope, and hence duties and negligent breach of the agreed-upon legal representation in this case, I would find that the circuit court erred in granting summary judgment.[10] I would therefore reverse and remand the case to the Panola County Circuit Court for further proceedings.
FACTS
¶ 39. This case arises from a legal-malpractice claim filed by Grace West Jennings against her attorney, Thomas S. Shuler, individually, and McClure & Shu-ler, a partnership composed of Shuler, James McClure Jr., and James McClure III (collectively Defendants). Over a period of several years, Jennings loaned money to her son, Allen West (West). In November 2002, Jennings secured the legal services of Shuler to perfect her interest in loans that she previously made to her son, and as stated in her affidavit, she relied on Shuler in all aspects related to securing her interest in these loans. With respect to the scope of legal representation, Jennings’s affidavit provides as follows:
I retained the law firm of McClure and Shuler to prepare documents evidencing loans I had extended to my son[,] Allen West. Pursuant to this engagement, Thomas Shuler of the law firm prepared a Promissory Note, Deed of Trust, Security Agreement^] and Assignment concerning the loans to Allen West. I relied on Mr. Shuler to handle all necessary legal aspects concerning this engagement with respect to my loans to Allen West.
¶ 40. In performing the legal tasks required to accomplish the goals of his legal representation of Jennings, Shuler prepared a note, deed of trust, assignment, and security agreement on a nine percent interest in H & G Land Company, Limited Partnership (H & G), West’s share in the West Family Trust, and West’s interest in some farm equipment. The security agreement granted Jennings a security interest in “[a]ll farm equipment now owned or hereafter acquired by [West], including but not limited to those items of equipment set forth on Exhibit ‘A’ attached hereto and ... referred to as ‘Collateral.’ ” Shu-ler advised Jennings that she would need to furnish him with the list of farm equipment mentioned in the security agreement, but Shuler never received the list of farm equipment referenced in the security agreement. Shuler argues on appeal that Jennings hired him merely to draft these specified documents, but the facts in the record support Jennings’s claim that securing her interest in West’s collateral was an objective of the legal matters entrusted to Shuler.
¶ 41. On December 31, 2002, West and Jennings executed the deed of trust, the assignment, and the security agreement. Shuler recorded the deed of trust in the Panola County records of deeds of trust on January 8, 2003, but he never filed a financing statement in accordance with Mississippi Code Annotated section 75-9-501 (Rev.2002) to perfect Jennings’s security *857 interest. In asserting that he possessed no duty to file the financing statement, Shuler explains that he never received the farm-equipment list referenced in the security agreement that he requested from Jennings. Shuler asserts that he needed this list to prepare the financing statement for filing. He also argues that his duty to perform legal services procured by Jennings ceased when he transferred his file on the matter to First Security Bank (FSB) at Jennings’s request.
II42. On April 9, 2003, Bill Fleming, a trust officer with FSB, presented Shuler with a transfer agreement signed by Jennings that transferred custody of the loan documents into a trust account administered by FSB. Shuler informed Fleming that no financing statement had been filed to perfect Jennings’s interest because he had not yet received the list of farm equipment referenced. The documents transferred to the custody of FSB also reflect a notation about the lack of a farm-equipment list. The record reflects that FSB merely maintained custody of the loan documents, and at oral argument in this case, the parties asserted no argument claiming that FSB assumed any legal-representation duties in FSB’s capacity as custodian of the financial documents.[11] West later provided FSB with the equipment list in January 2004.
¶ 43. Subsequently, in March 2006, West filed a Chapter 12 bankruptcy. Jennings again hired Shuler to represent her. During the bankruptcy proceeding, Jennings learned that her security interest in West’s collateral had not been perfected and that Shuler never filed a financing statement to protect her interest in West’s collateral.[12] On May 14, 2009, the bankruptcy trustee filed an adversary proceeding against Jennings to challenge her interest in West’s H & G interest.
¶ 44. Shuler argues that the trustee would have disputed Jennings’s security interest even if the interest had been perfected. However, no evidence in the record exists to support this argument. Also, this argument involves factual issues affecting the proximate cause of any resulting damages, but this argument of an inevitable dispute with the trustee fails to relate to the scope and purpose of Shuler’s prior legal representation of Jennings. This argument further fails to impact the questions of whether Shuler possessed a duty to perfect Jennings’s security interest with the general description of “equipment” or “farm equipment” available to him and whether he possessed a duty to reasonably pursue outstanding information that he deemed necessary to complete the legal tasks falling within the scope and objectives of his legal representation of Jennings.
*858 ¶ 45. After learning of the adversary proceeding, Jennings engaged David Cocke to represent her in the adversary proceeding with the trustee, and Shuler withdrew as her attorney. Jennings and the bankruptcy trustee subsequently reached a settlement in which Jennings received $15,600 more than the appraised value of West’s interest in H & G.
¶ 46. Jennings then filed her complaint against Defendants on November 22, 2011, seeking to recover damages, including the attorneys’ fees she incurred during the adversary proceeding to defend her security interest in West’s collateral.[13] Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment. A hearing commenced on the motion on April 20, 2012. At the conclusion of the hearing, the circuit court requested additional briefing on whether, under Mississippi law, a duty exists for an attorney to file a financing statement when a debt is secured by collateral. On June 14, 2012, the circuit court entered an order granting summary judgment in favor of Defendants, finding that no duty exists. On February 6, 2013, Defendants filed a motion to dismiss the appeal, which this Court denied.
DISCUSSION
¶ 47. This case involves an action for negligence against an attorney, Shuler, and assertions that he negligently failed to complete legal work required within the scope of representing his client, Jennings. Questions of material fact exist regarding whether Shuler possessed a duty to perfect Jennings’s security interest in collateral pledged by her son, West, and whether Shuler negligently breached that duty. To determine whether an attorney negligently handled his client’s affairs entrusted to him, first the scope and purpose of the legal representation between the parties must be factually determined.[14] Also, facts must establish what legal tasks and “means” were required to be accomplished to achieve the objectives and purpose of the legal representation in this case to determine if Shuler possessed a duty to perform a specific legal task to achieve the purpose of the representation. Whether an intervening cause is substantial enough to relieve performance of a contractual duty constitutes a material question of law and fact.
¶ 48. In some past cases, precedent recognized that negligence per se existed because the law defined the attorney’s duty in handling the particular case or legal work.[15] In Hickox ex rel. Hickox v. Holleman, 502 So.2d 626, 636 (Miss.1987) (superseded by rule on other grounds), the attorney failed to file an action within the statute of limitations, and the Mississippi Supreme Court found that such negligence constituted negligence as a matter of law.[16] *859 This case presents a fact question as to whether Shuler acted negligently in his legal representation of Jennings.
¶ 49. Agency theory applies when a client hires an attorney to perform certain legal work,[17] and the comment to Mississippi Rule of Professional Conduct 1.3 provides that an attorney should carry through to conclusion a matter that the attorney has undertaken for the client. In this case the scope of representation defined the matters undertaken by Shuler pertaining to securing Jennings’s interest in West’s collateral. Statutes and precedent define the requirements to perfect and secure a creditor’s interests in the collateral involved in this case. See Miss. Code Ann. § 75-9-501.
¶ 50. Section 75-9-501 provides instruction on the proper place to file to perfect a security interest in the collateral involved in this case and requires a financing statement to be filed with the Secretary of State’s Office and with the chancery court of the county where the collateral is located. The collateral involved in this case included a nine percent interest in H & G, West’s share in the West Family Trust, and West’s interest in some farm equipment. Shuler prepared a note, deed of trust, assignment, and security agreement for Jennings, and he recorded the deed of trust in the Panola County records of deeds of trust. However, Shuler never filed a financing statement with the Secretary of State in accordance with section 75-9-501 to perfect Jennings’s interest in the collateral pledged to secure the deed of trust.
¶ 51. Shuler asserts that he possessed no duty to complete the steps required to perfect Jennings’s security interest because Jennings failed to provide him an itemized listing of the farm equipment to be secured. Shuler requested that Jennings provide this list, but she failed to provide it to him. Shuler therefore claims that Jennings’s intervening conduct of failing to provide this requested information relieved him of his duty to further perform. However, applicable statutes reflect that no such list is required to perfect the security interest in the collateral in this case.
¶ 52. In perfecting a security interest in accordance with section 75-9-501 with a sufficient description of collateral, Mississippi Code Annotated section 75-9-102(a)(33) (Supp.2013) defines the category of “equipment” as “goods other than inventory, farm products, or consumer goods.” Hence, the farm equipment involved as collateral in this case falls within the statutory definition of “equipment.” We also acknowledge that Mississippi Code Annotated section 75-9-108 (Rev.2002) provides that, with certain exceptions, a description of personal or real property is sufficient if the description reasonably identifies the property by category. Therefore, I would find that Shuler errs in arguing that he needed a list of itemized farm equipment to sufficiently describe the collateral securing the debt before he could file the financ *860 ing statement.[18] As established by section 75-9-108, the financing statement sufficiently describes the collateral by setting forth “equipment” as the appropriate category of the collateral.[19]
¶ 53. With respect to statutory requirements to perfect a security interest, Shuler erred in asserting that an itemized list of the farm equipment was required before he could perform the legal work to perfect Jennings’s security interests therein. I would nonetheless find that Jennings’s failure to provide Shuler the requested list of farm equipment for his stated purpose of completing the financing statement creates a factual question as to his duty to complete that legal work of perfecting Jennings’s security interest and involves a question of what farm equipment Jennings sought as collateral, some or all.[20] I would therefore find no negligence per se in this case even though section 75-9-501 clearly provides the statutory requirements defining the legal tasks to be performed to perfect a security interest in equipment. Due to Jennings’s failure to provide an itemized list of farm equipment for the stated need of completing the legal task, I would instead find that a question of material fact exists as to whether Shuler possessed a duty to complete the legal work of securing Jennings’s interest in the collateral in accordance with section 75-9-501, including the task of filing the financing statement. The determination of whether Shuler possessed such a duty involves a determination of whether Shuler should have reasonably known that the financing-statement description satisfied statutory requirements, that no specific equipment listing was required, and that the legal tasks of perfecting and filing the financing statement required no further information.[21] The determination also involves a determination of whether Jennings sought to limit the farm equipment used as collateral to identified pieces of equipment or sought to use all West’s farm equipment as collateral.
¶ 54. The record reflects that the circuit court granted summary judgment in favor of Defendants, finding that no genuine issue as to any material fact for jury determination existed and that an attorney possesses no duty to personally file a financing statement to perfect a client’s security interest. However, the determination of whether such a duty exists springs from the factual question establishing the *861 scope of representation between the attorney and client and the matters undertaken by the attorney to accomplish the objectives of the agreed-upon legal matters entrusted to his representation.[22] The law fails to identify who must personally file a financing statement to perfect a security interest for collateral involved herein. However, the law indeed requires such a security interest to be filed, in accordance with the applicable statute, in two locations, the Secretary of State’s Office and the chancery court where the collateral is located.[23]
¶ 55. The statute defining how to perfect fails to address “who” performs the physical acts required. The determination of responsibility to perform the legal tasks involved rests upon the factual determination of the scope of the particular legal representation between Shuler, as attorney, and Jennings, his client. The objectives of that particular agreed-upon scope of representation define the purpose of the legal representation, and the fact question of purpose of the legal representation defines legal tasks required to accomplish that purpose. The attorney determines the means to accomplish those objectives. The attorney must determine whether legal tasks required in order to fulfill the means and objectives entrusted to his representation are such that the attorney must fulfill those tasks personally or whether the attorney may supervise others or subordinate staff to accomplish tasks required to achieve the objectives of the representation.
¶ 56. After reviewing the record, I find that the circuit court erred in granting summary judgment in favor of Defendants because questions of material fact exist.[24] In this appeal by Jennings, I find that a question of material fact exists as to the following: (1) whether Shuler, as Jennings’s attorney, possessed a duty to perfect her security interest; (2) the scope and purpose of his representation of her; and (8) whether he performed the legal tasks undertaken by him to perform the purpose and scope of the agreed-upon legal work or whether her failure to timely deliver the farm-equipment list relieved him of his duty to perform. I would therefore reverse the circuit court’s order granting summary judgment and remand this case for further proceedings consistent with this opinion.
LEE, C.J., AND JAMES, J., JOIN THIS OPINION.

. Mississippi Rule of Professional Conduct 1.2, entitled "Scope of Representation,” and its comment indicate that a client determines the purpose and objectives of the representation, and the attorney determines the means by which to accomplish the objectives. Often, though, the line is blurred.

. We acknowledge that in Defendants’ brief they argue that FSB breached its duty to Jennings by failing to file the financing statement. However, no evidence in the record supports this argument or shows that Jennings engaged FSB for any legal representation.

. Jennings argues that she did not discover the failure to file the financing statement until November 2008. On November 26, 2008, the bankruptcy trustee filed an application to hire an outside attorney to investigate claims that Jennings had converted assets from the bankruptcy estate. Jennings later filed her legal-malpractice claim against the Defendants on November 22, 2011, which was within the three-year statute-of-limitations window. See Bennett v. Hill-Boren, P.C., 52 So.3d 364, 369 (¶ 15) (Miss.2011) (citing Smith v. Sneed, 638 So.2d 1252, 1253 (Miss.1994)) (“Under the discovery rule, as applied in a legal-malpractice action, the [three-year] statute of limitations begins to run on the date that the plaintiff learns, or through reasonable diligence, should have learned, of the negligence of the lawyer.”).

. See Fulton v. Miss. Farm Bureau Cas. Ins. Co., 105 So.3d 284, 289 (¶¶ 22-23) (Miss.2012) (citing Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 295 (Miss. 1992)) (jury awarded attorney’s fees as extracontractual damages where Fulton pleaded economic damages, including attorney’s fees, as damages resulting from defendant’s negligence).

. See generally Miss. R. Prof. Conduct 1.2 & cmt. (discussing the scope of an attorney’s representation); Singleton v. Stegall, 580 So.2d 1242, 1244-45 (Miss. 1991) (finding that an attorney owes his client duties falling into three broad categories).

. See Byrd v. Bowie, 933 So.2d 899, 904-05 (¶¶ 16-18) (Miss.2006) (where negligence is established as a matter of law, then no expert testimony is needed to show duty and breach of the duty); Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1042 (¶ 13) (Miss.2003) (attorney failed to file designation of expert witness within deadline set forth by Mississippi Rule of Civil Procedure 26 and the court).

. See Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1215 (Miss.1996) (discussing the elements that a plaintiff must *859 prove by a preponderance of the evidence to recover in a legal-malpractice case); Forbes v. St. Martin, 145 So.3d 1184, 1206 (¶ 56) (Miss.Ct.App.2013) (citing Wilboum in a discussion of claims for legal malpractice and breach of fiduciary duty).

. See Century 21 Deep S. Props. Ltd. v. Corson, 612 So.2d 359, 374 (Miss.1992) (in applying gratuitous agency theory where attorney performed negligent title work, court concluded that purchasers who relied on defective title could recover damages; however, purchasers could not prove damages due to their failure to attempt to cure title); Higgins Lumber Co. v. Rosamond, 217 Miss. 1, 2-7, 63 So.2d 408, 408-10 (1953) (discussing the principal and agency relationship and the duty of the agent to the principal in a case involving a builder and an architect).

. See Forbes, 145 So.3d at 1202 (¶ 58) (citing the Mississippi Supreme Court opinion in Hartford Accident & Indemnity Co. v. Foster, 528 So.2d 255, 284-85 (Miss.1988), and finding that "legal malpractice may be a violation of the standard of care of exercising the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, or the breach of a fiduciary duty”).

. See West Implement Co. v. First S. Prod. Credit Ass'n, 815 So.2d 1164, 1166-67 (¶ 11) (Miss.2002) (ruling that the terms "equipment and machinery” in the financing statement sufficiently described the collateral and put others on notice of the interest).

. See Miss. R. Prof. Conduct 1.2 cmt. (in discussing scope of representation, acknowledging that the distinction between objectives and means to accomplish objectives of representation is often blurred; in many cases, a joint undertaking between the attorney and client is required, but the attorney should assume responsibility for technical and legal tactics); Waggoner v. Williamson, 8 So.3d 147, 154-55 (¶¶ 14-15) (Miss.2009) (court found genuine issues of material fact existed as to plaintiffs’ claim against attorney for breach of fiduciary duty).

.See Mississippi Rules of Professional Conduct 1.1 and 1.3 for a discussion of the level of competence and diligence that a lawyer shall provide to his client. The comment to Rule 1.1 provides the factors for determining whether an attorney possesses the requisite knowledge and skill in a particular matter.

. See Mississippi Rule of Professional Conduct 1.2 for a discussion of the scope of an attorney’s representation.

. See Miss.Code Ann. § 75-9-501; see also Miss. R. Prof. Conduct 5.1 (responsibility of supervising attorneys); Miss. R. Prof. Conduct 5.3 (responsibilities toward non-lawyer assistants); In re Hammons, 614 F.2d 399, 405 (5th Cir.1980) (under Mississippi law a "secured party must determine the correct place in which to file his financing statement on the basis of the facts existing at the time when the last event necessary for the perfection of his security interest occurs”).

. See Forbes, 145 So.3d at 1208 (¶ 1) (reversing chancellor’s grant of summary judgment to attorney in a legal-malpractice suit); see also Wilbourn, 687 So.2d at 1215 (discussing the elements that a plaintiff must prove by a preponderance of the evidence to recover in a legal-malpractice case); Singleton, 580 So.2d at 1244-45 (clarifying that an attorney owes his client duties falling into three broad categories, including a duty of care, a duty of loyalty, and any duties provided by contract); Foster, 528 So.2d at 284-85 (quoting Mallen and Levit, Legal Malpractice § 1 (2d ed.1981) in a discussion of the dual bases for attorney malpractice liability and finding that attorney malpractice could be defined as breach of the standard of care or standard of conduct).