822 So.2d 323 (2002)
SOUTHEASTERN MEDICAL SUPPLY, INC., Appellant,
v.
BOYLES, MOAK & BRICKELL INSURANCE, INC., Appellee.
No. 2000-CA-00787-COA.
Court of Appeals of Mississippi.
March 5, 2002.
Rehearing Denied May 7, 2002.
Certiorari Denied August 1, 2002.
*325 David L. Minyard, Oxford, John G. Holaday, Jackon, George McDowell Yoder, III, attorneys for appellant.
J. Stevenson Ray, Tommie Sullivan Cardin, Mary Jacqueline Watson, Jackson, attorneys for appellee.
Before McMILLIN, C.J., THOMAS, and LEE, JJ.
THOMAS, J., for the court.
¶ 1. On December 1, 1997, Southeastern Medical Supply ("Southeastern") filed suit against Boyles, Moak & Brickell Insurance, Inc. ("Boyles, Moak"), as well as New Hampshire Insurance Services, Inc. ("New Hampshire"), claiming breach of contract to insure, breach of an oral contract for insurance accompanied by several assorted insurance and tort claims asking for compensatory damages of $100,000. On May 7, 1999, Southeastern amended its complaint to include a prayer for punitive *326 damages and lost income, adding allegations of bad faith and intentional, willful and reckless misrepresentation by Boyles, Moak. In April 1999, New Hampshire settled with Southeastern for $70,000 and was dismissed from the case with prejudice. In January 2000, a jury returned a verdict in favor of Southeastern in the amount of $87,362.18, which was the exact amount of Southeastern's compensatory damages. The court then granted Boyles, Moak's motion to reduce the verdict by the amount of the prior settlement with New Hampshire Insurance, entering a final verdict of $17,362.18 against Boyles, Moak. Aggrieved, Southeastern asserts the following issues as error:
I. THE LOWER COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT ON LOST PROFIT DAMAGES.
II. THE LOWER COURT ERRED WHEN IT STRUCK THE OPINION TESTIMONY OF BRENT SOUTHERN.
III. THE LOWER COURT ERRED WHEN IT STRUCK EVIDENCE INVOLVING THE PRIOR CONDUCT OF BOYLES, MOAK RELATING TO WORKERS' COMPENSATION AND AUTOMOBILE COVERAGES.
IV. THE LOWER COURT ERRED WHEN IT STRUCK EVIDENCE INVOLVING THE DESTRUCTION OF COMPUTER RECORDS BY BOYLES, MOAK.
V. THE LOWER COURT ERRED IN DENYING SOUTHEASTERN'S ORE TENUS MOTION TO ADD CLAIMS OF BREACH OF FIDUCIARY DUTY AND RES IPSA LOQUITUR.

VI. THE LOWER COURT ERRED IN GRANTING BOYLES, MOAK'S MOTION FOR DIRECTED VERDICT ON THE INTENTIONAL MISREPRESENTATION CLAIM AND THE PUNITIVE DAMAGES CLAIM.
VII. THE LOWER COURT ERRED IN REDUCING THE VERDICT BY THE AMOUNT OF SOUTHEASTERN'S SETTLEMENT WITH NEW HAMPSHIRE PRIOR TO THE TRIAL.
Finding no error, we affirm.

FACTS
¶ 2. W. William Huff developed Southeastern, a small medical equipment company, in 1984. Durr Boyles, an insurance agent and member of Boyles, Moak, began providing Southeastern and Huff with insurance sometime in the late 1980s.
¶ 3. In April 1995, Boyles and Huff met for the annual coverage renewal meeting. Boyles testified that during this meeting Huff indicated that he was not interested in additional coverage, and he merely renewed the existing policy, which was a general policy that did not include specific litigation liability coverage. To the contrary, Huff testified that during this meeting he inquired about and asked to purchase insurance that would cover the costs of litigation in the event that a lawsuit were to arise. Following this meeting with Huff, Boyles renewed Southeastern's existing general coverage policy.
¶ 4. Due to the competitive nature of its business, Southeastern began incorporating non-compete clauses into its employment contracts with its sales personnel. Despite the non-compete agreements, a dispute arose between Huff and an employee in Alabama and an employee in Louisiana in approximately June of 1995. Both employees were sales representatives. The dispute involved delays in their commission payments. The two employees threatened to leave the company and *327 take their clients with them to Southeastern's competition unless their salaries were increased.
¶ 5. Huff testified that as a result of these threats he contacted Boyles and informed him of the impending litigation. Huff inquired as to the insurance coverage relating to the costs of litigation. Huff claims that Boyles assured him that any resulting litigation expenses would be paid by New Hampshire Insurance. Huff was told to contact Boyles as soon as a claim was made so that future details might be addressed. Relying on these conversations with Boyles, Huff refused to accept the demands made for increased salaries. Suits were initiated in Alabama and Louisiana in August 1995. Huff contacted Boyles again in September 1995, where Boyles reassured him that the litigation expenses were covered by the policy and he would immediately file the claim with New Hampshire Insurance. Huff further testified that later on in the same month he had a conference call with both Boyles and Southeastern's attorney, Brent Southern, wherein Boyles reassured both Huff and Southern that Southeastern's insurance policy would cover the costs of litigation.
¶ 6. In April 1996, Boyles and Huff met again for the annual coverage renewal meeting. Boyles testified that it was during this meeting that he first learned about the disputes between Huff and his two salesmen. By this time, Huff had employed attorneys and engaged in litigation in Louisiana and Alabama and incurred significant legal expenses. Boyles claimed that it was at this time that he first offered to check and see if Southeastern's general liability policy would cover any of the litigation costs. Huffs attorney, Brent Southern, sent Boyles copies of Huffs legal bills in April 1996. Boyles then gave Southern the name and telephone number of an adjuster at the New Hampshire Insurance company and vice versa so that the two might negotiate the claim. In December 1996, New Hampshire Insurance denied the legal costs claim and sent a copy of the denial letter to Boyles.
¶ 7. On December 1, 1997, Southeastern filed suit against Boyles, Moak, as well as New Hampshire Insurance Services, Inc., the company that provided Huffs general liability policy. Southeastern claimed that Boyles, Moak and New Hampshire Insurance had breached a contract to insure, breached an oral contract for insurance as well as several assorted insurance and tort claims. Huff asked for compensatory damages of approximately $100,000, being the approximate amount of legal bills incurred during the litigation between Southeastern and the two salesmen who left the company. On May 7, 1999, Southeastern amended its complaint to include a prayer for punitive damages and lost income, adding allegations of bad faith and intentional, willful and reckless misrepresentation by Boyles, Moak.
¶ 8. In April 1999, New Hampshire settled with Southeastern for $70,000 and was dismissed from the case with prejudice. In October 1999, Boyles, Moak argued its motion for partial summary judgment as to the claim of lost profits. The court granted this motion and also struck the opinion testimony of Southeastern's lawyer Brent Southern, which related to lost profits.
¶ 9. In January 2000, the case went to trial. The court heard Boyles, Moak's motion in limine to exclude evidence involving separate, unrelated occasions which Southeastern claimed Boyles failed to procure coverage as instructed. The court also heard Boyles, Moak's motion in limine to exclude evidence involving Southeastern's claim that Boyles, Moak was guilty of spoliation of computer records. Both of these motions were granted.
*328 ¶ 10. The court then heard Boyles, Moak's motion for a directed verdict on each of the counts included in the amended complaint. The court also heard Southeastern's ore tenus motion to further amend its complaint to include claims of breach of fiduciary duty and res ipsa loquitur. The court granted Boyles, Moak's motion for a directed verdict and denied Southeastern's ore tenus motion to amend the complaint.
¶ 11. The court then proceeded to hear evidence addressing the remaining complaint. The jury returned a verdict in favor of Southeastern in the amount of $87,362.18, which was the exact amount of Southeastern's legal expenses incurred during litigation involving the two employees and the non-compete clause. The court then granted Boyles, Moak's motion to reduce the verdict by the amount of the prior settlement with New Hampshire Insurance, entering a final verdict of $17,362.18 against Boyles, Moak.

ANALYSIS

I. DID THE LOWER COURT ERR BY GRANTING SUMMARY JUDGMENT ON LOST PROFIT DAMAGES?
¶ 12. Southeastern claims that Boyles, Moak's failure to procure the insurance in order to cover the costs of litigation in the non-compete suits caused Southeastern to lose profits in the approximate amount of $673,618.00. The lower court granted a summary judgement on this issue, citing lack of proximate cause as well as the speculative nature of the evidence supporting this issue.
¶ 13. In order to survive a motion for summary judgment, "the non-moving party must produce specific facts showing that there is a genuine material issue for trial." Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1213 (Miss.1996). See also Pride Oil Co., Inc. v. Tommy Brooks Oil Co., 761 So.2d 187, 191 (Miss.2000).
¶ 14. The standard applied in considering consequential damages in the nature of lost profits is one of "reasonable certainty." Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss.1987); Missouri Bag Co. v. Chemical Delinting Co., 214 Miss. 13, 58 So.2d 71, 76 (1952). This standard requires that both the existence of lost profits damages as well as the showing that the cause of the lost profits is due to the breach must be shown with reasonable certainty. Id. at 78.
¶ 15. While Southeastern claims that the timely support of the alleged insurance policy would have given way to a more favorable result in the non-compete suits, this proposed scenario is based upon several assumptions. Therefore, not only does the evidence submitted fail to create a proximate cause linking any action or inaction taken by Boyles, Moak to the lost profits suffered by Southeastern, but this evidence is also too speculative to support any claim for lost profits.

II. DID THE LOWER COURT ERR BY STRIKING THE OPINION TESTIMONY OF BRENT SOUTHERN?
¶ 16. First of all, Southeastern cites no authority to support this issue of error. The failure to cite authority in support of an assignment of error acts as a procedural bar to its consideration. Williams v. State, 708 So.2d 1358, 1360 (Miss.1998). Further, Rule 4.04 of the Mississippi Uniform Rules of Circuit and County Court Practice states that "absent special circumstances, the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." URCCC Rule 4.04. Southeastern planned to offer *329 Southern's testimony as an expert witness as to his opinion on the issue of lost profits, but did not designate Southern as an expert witness.

III. DID THE LOWER COURT ERR BY STRIKING EVIDENCE INVOLVING THE PRIOR CONDUCT OF BOYLES, MOAK RELATING TO WORKERS' COMPENSATION AND AUTOMOBILE COVERAGES?
¶ 17. The lower court struck evidence involving mistakes and alleged misrepresentations made by Boyles relating to automobile coverage and workers' compensation coverage that Huff had purchased as an individual and through Southeastern.
¶ 18. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. One must show that the evidence in question is likely to affect the probability of a fact of consequence in the case in order for that evidence to be relevant. Mississippi State Highway Comm'n v. Dixie Contractors, Inc., 375 So.2d 1202 (Miss.1979).
¶ 19. The Mississippi Rules of Evidence Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The rule continues to explain that such evidence "may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
¶ 20. Southeastern failed to show that the matter of the automobile coverage and the workers' compensation coverage caused any damage. These mistakes made by Boyles also qualify, by definition, as prior bad acts and Southeastern has failed to show that any exception applies. Therefore, the proffered evidence was both irrelevant and inadmissible.

IV. DID THE LOWER COURT ERR BY STRIKING EVIDENCE INVOLVING THE DESTRUCTION OF COMPUTER RECORDS BY BOYLES, MOAK?
¶ 21. The Mississippi Supreme Court has held that "[w]hen evidence is lost or destroyed by one party, thus hindering the other party's ability to prove his case, a presumption is raised that the missing evidence would have been unfavorable to the party responsible for its loss." Thomas v. Isle of Capri Casino, 781 So.2d 125, 133 (Miss.2001). It has also been established that "in the absence of bad faithi.e., evidence of culpability on the part of the spoliatorthen there can be no adverse inference or presumption ... even when there is prejudice to the innocent party." Stahl v. Wal-Mart Stores, Inc., 47 F.Supp.2d 783 (S.D.Miss.1998).
¶ 22. Southeastern failed to show that any evidence was destroyed. All computer files that were destroyed were first copied and, therefore, preserved. The destruction of these computer files was done in good faith and pursuant to a routine business procedure. Southeastern also failed to show how the alleged destruction of evidence had any affect on its case.

V. DID THE LOWER COURT ERR IN DENYING SOUTHEASTERN'S ORE TENUS MOTION TO ADD CLAIMS OF BREACH OF FIDUCIARY DUTY AND RES IPSA LOQUITUR?

¶ 23. A trial court's denial of a motion to amend a complaint is subject to an abuse of discretion standard of review. Taylor Mach. Works, Inc. v. Great American *330 Surplus Lines Ins. Co., 635 So.2d 1357, 1362 (Miss.1994).
¶ 24. On the third day of trial, Southeastern made an ore tenus motion to add claims of breach of fiduciary duty and res ipsa loquitur. This motion was denied by the lower court, which opined that the motion was made too late, there had been no discovery relating to fiduciary duty and that a res ipsa loquitur claim did not apply as a matter of law to the case at hand.
¶ 25. We agree that the motion came too late. We also agree that Southern had made no discovery relating to a charge of breach of fiduciary duty although there was ample time to do so. We further agree that a res ipsa loquitur claim, as a matter of law, does not apply to the case at hand.
¶ 26. Finally, Southeastern failed to show how these charges would have been successfully utilized. In their brief, Southeastern simply states:
As to the applicability of the claims Plaintiff sought to join to the facts of the case, Plaintiff would point the court to Stringer v. Bufkin, 465 So.2d 331, 334 (Miss.1985)(finding res ipsa loquitur applicable to failure to procure insurance cases), and First United Bank of Poplarville v. Reid, 612 So.2d 1131, 1137 (Miss.1992)(indicating that agent had fiduciary duty to procure insurance). While these cases are certainly not the only cases Plaintiff would rely on, they are supportive of Plaintiff's position in its ore tenus motion.
We fail to see how these cases would support the res ipsa loquitur and fiduciary duty charges.
¶ 27. In Stringer, the plaintiff sought to recover from his insurance coverage after the wheel of a third party truck came off and crashed through Stringer's front window, injuring his wife. Stringer, 465 So.2d 331. Res ipsa loquitur applied in Stringer only in relation to the origin and occurrence of the accident, being the third party truck. It had nothing to do with the insurance agent or the policy. Therefore, Southeastern is mistaken when it states that Stringer supports the argument that res ipsa loquitur is applicable to a failure by an insurance agent to procure coverage.
¶ 28. The First United Bank of Poplarville case states that an insurance agent has a duty to use a "degree of diligence and care with regard to securing insurance which a reasonably prudent person would exercise in the transaction of that person's own business of a like nature." First United Bank of Poplarville, 612 So.2d at 1137. The court accepted jury instruction "P1," an instruction that Southeastern submitted, which states as follows:
You are instructed as a matter of law that Durr Boyles, on behalf of Boyles, Moak & Brickell Insurance, Inc., was at all pertinent times the insurance agent for Southeastern Medical Supply, Inc. You are further instructed that an insurance agent owes a duty to his principal to procure insurance policies with reasonable diligence and good faith. The duty owed is to provide the level of skill in procuring insurance reasonably expected of one in that profession. Stated another way, the agent has a duty to use that degree of diligence and care with regard to securing insurance which a reasonably prudent person would exercise in the transaction of that person's own business of a like nature.
To whatever extent Southeastern relied on First United Bank of Poplarville, it received the benefit of this case in jury instruction "P1."

VI. DID THE LOWER COURT ERR IN GRANTING BOYLES, MOAK'S MOTION FOR DIRECTED VERDICT ON THE INTENTIONAL *331 MISREPRESENTATION CLAIM AND THE PUNITIVE DAMAGES CLAIM?
¶ 29. Our supreme court has established the following elements of fraudulent misrepresentation as: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Franklin v. Lovitt Equipment Co., Inc., 420 So.2d 1370, 1373 (Miss.1982). These elements must be shown by clear and convincing evidence. Id.
¶ 30. After considering all of the evidence and giving Southeastern the benefit of all the inferences from its evidence, the lower court held that there was no showing of an intentional misrepresentation sufficient to go to the jury. On the other hand, the lower court simply held that there was a showing of possible negligent misrepresentation, which the jury was fully instructed upon. We agree. Southeastern did not meet the standard of showing intentional misrepresentation at trial. Although Southeastern pled intentional misrepresentation, it failed to present any proof at trial on the issue.
¶ 31. Our supreme court has held that "[w]hen an insurance company is sued for refusing to pay a claim, the existence of an arguable reason for that refusal renders inappropriate any assessment of punitive damages." Independent Life & Accident Ins. Co. v. Peavy, 528 So.2d 1112, 1115 (Miss.1988). Our supreme court has also held that "[f]or punitive damages to be awarded, the injuries must have some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1192 (Miss.1996). We agree with the lower court that the case at hand lacks the requisite malice or gross negligence in order to consider punitive damages. We also agree with the lower court that Boyles did display an arguable reason for his refusal to pay Southeastern's claim.

VII. DID THE LOWER COURT ERR BY REDUCING THE VERDICT BY THE AMOUNT OF SOUTHEASTERN'S SETTLEMENT WITH NEW HAMPSHIRE PRIOR TO THE TRIAL?
¶ 32. "Motions challenging the quantum of damages and seeking a remittitur are by their very nature committed to the sound discretion of the trial judge. Where the trial judge acts upon these matters, [an appellate court] will reverse only if he has abused or exceeded his discretion." Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1193 (Miss.1996). In the event that there are two defendant parties and one of the two settles with the plaintiff prior to trial, the jury is not to be "informed of the settlement or the payment, and, if a verdict were returned for the plaintiff, the trial judge would reduce the amount awarded by the jury by the amount of the settlement by the other defendant." Whittley v. City of Meridian, 530 So.2d 1341, 1346 (Miss.1988).
¶ 33. The jury returned a verdict in favor of Southeastern in the amount of $87,362.18, which was the exact amount of Southeastern's legal expenses incurred during litigation involving the two employees and the non-compete clause. The court then granted Boyles, Moak's motion to reduce the verdict by the amount of the prior settlement with New Hampshire Insurance, *332 which was $70,000.00, entering a final verdict of $17,362.18 against Boyles, Moak. This was the proper procedure in calculating the final verdict.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. MYERS AND CHANDLER, JJ., NOT PARTICIPATING.