856 So.2d 692 (2003)
Troy D. BROWN, Appellant,
v.
NORTH JACKSON NISSAN, INC. and Nathan Graham, Appellees.
No. 2001-CA-01122-COA.
Court of Appeals of Mississippi.
September 30, 2003.
*693 Michael S. Allred, Ottowa E. Carter, Jackson, attorneys for appellant.
Teselyn Afrique Melton, Robert L. Gibbs, John Curtis Hall, Jackson, attorneys for appellee.
Before MCMILLIN, C.J., THOMAS AND CHANDLER, JJ.
MCMILLIN, C.J., for the Court.
¶ 1. Troy Brown recovered a judgment against North Jackson Nissan and its sales agent, Nathan Graham, on a claim that these defendants, acting in concert, had wilfully converted his used automobile for their own use. Brown has appealed, though he was successful in recovering his actual damages, on the ground that the trial court erred in not submitting the issue of punitive damages to the jury. Additionally, Brown contends that the trial court erred in granting these defendants credit against the judgment in an amount equal to that received by Brown in a pretrial settlement reached with other defendants named in the suit. Finding no error, we affirm.

I.

Facts
¶ 2. The parties vigorously contested the underlying facts of the case. In view of the jury's verdict for conversion in favor of Brown, we must assume that the jury resolved the critical disputed facts establishing the act of conversion in Brown's favor. This recitation of facts, which is necessary to understand the issues of law discussed hereafter, finds support in the record and would be in accord with Brown's theory of recovery.
¶ 3. Brown appeared at North Jackson Nissan and entered into discussions with Graham, a salesman for the company, regarding the possibility of trading his existing *694 vehicle for a different model. After Brown exhibited some reluctance to trade, an arrangement was reached whereby Brown would receive sufficient financing to purchase a new vehicle and receive cash back that would be used to retire other pending debts. At Graham's insistence, Brown left his vehicle with North Jackson Nissan and went home in a loaned vehicle to give him further time to contemplate the proposed deal. After overnight deliberations, Brown decided that he could not afford to go through with the transaction, and he returned to the dealership to regain possession of his vehicle. He was informed, however, that the vehicle had already been sold. After some further negotiations, Brown purchased a replacement vehicle under an arrangement that included financing a portion of the purchase price. Brown was unable to make the required monthly installments on the new vehicle, and it was ultimately repossessed.
¶ 4. After the new vehicle was lost to Brown because of the repossession, he learned that, in fact, his original trade-in vehicle had not been sold when he had originally appeared and asked for its return. Brown's theory of recovery was that North Jackson Nissan's agent, Graham, fraudulently misrepresented the facts concerning the vehicle so that Brown would not attempt to regain possession and would, instead, go through with the original plan to purchase a replacement vehicle from North Jackson Nissan. This concealment of the true facts regarding his vehicle, with the specific purpose of wrongfully and permanently depriving him of its possession, was an act of conversion according to Brown.
¶ 5. Brown originally brought suit against North Jackson Nissan, Graham, and two financing agencies alleged to have been involved in the transaction. The original complaint advanced thirteen separate theories of recovery and sought punitive damages based on the wilful nature of the alleged acts of the various defendants. Prior to trial, Brown's claims against the financing agencies were resolved by settlement in which Brown received the sum of $2,200.
¶ 6. Brown proceeded to trial solely against North Jackson Nissan and Graham. At the conclusion of the proof, Brown abandoned all theories of recovery except his claims of fraud and conversion. The jury found for the defendants on the fraud claim but found them liable in conversion, assessing Brown's actual damages at $10,250. After the jury returned its verdict and while it was still empaneled, the trial court inquired of counsel for all parties if there was anything further to come before the court at the time. Both sides responded in the negative and the court dismissed the jury.
¶ 7. North Jackson Nissan and Graham filed a post-verdict motion seeking a determination by the trial court that they were entitled to credit against the judgment in the sum of $2,200, being the amount received by Brown in the pretrial settlement with the financing organizations. The court allowed the credit over Brown's objection.
¶ 8. Brown filed a posttrial motion for new trial, alleging among other things that the trial court committed reversible error when it failed to proceed under the applicable statute to resolve his claim for punitive damages after the jury had returned its verdict for actual damages. The trial court denied the motion, finding that Graham had waived his right to pursue punitive damages by not raising the issue when the court had inquired, at a time when the jury was still impaneled, if either party had anything further to come before the court.
*695 ¶ 9. In this appeal, Brown alleges that this was reversible error. He also attacks the trial court's decision to allow credit against the judgment for the settlement amount.

II.

Issue One: Punitive Damages
¶ 10. Brown's complaint sought punitive damages against the defendants, and he submitted a proposed punitive damage instruction. In keeping with the statutorily-mandated bifurcated nature of a case potentially involving punitive damages, the trial court deferred consideration of Brown's requested punitive damage instruction when reviewing proposed jury instructions on the law relating to liability and actual damages. Miss.Code Ann. § 11-1-65 (Rev.2002).
¶ 11. There can be no doubt that, once the jury returned its verdict finding in Brown's favor on his claim sounding in conversion (even though the jury found for North Jackson Nissan and Graham as to Brown's claim of fraud), it was the appropriate time to consider the issue of Brown's unresolved claim for punitive damages. Section 11-1-65(1)(c) requires that, upon an award of actual damages, "the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered." Miss.Code Ann. § 11-1-65(1)(c) (Rev.2002) (emphasis added). Subsection (d) goes on to say that "[t]he court shall determine whether the issue of punitive damages may be submitted to the trier of fact ..." and then charges the trier of fact to decide whether such damages are appropriate and, if so, in what amount. Miss.Code Ann. § 11-1-65(1)(d) (Rev.2002).
¶ 12. In this case, the prompt consideration of the propriety of punitive damages was not undertaken. After the jury returned its verdict, the court inquired if there was "[a]nything further from the plaintiff at this time in connection with the verdict." Counsel replied that, "I have a motion." However, there is no indication as to what that motion might have been because, at that point, defense counsel sought to have the jury polled and, based upon that inquiry, it initially appeared that the verdict had not been agreed to by the requisite number of jurors. After some further proceedings to resolve what turned out to be a misunderstanding on the part of one juror, the verdict was accepted. At that point, the court excused the jury "for a few moments while we take up a legal matter." After the jury departed, the court, in what was an apparent shorthand version of its earlier inquiry, simply stated the word, "Plaintiff." Counsel responded, "I don't think I have a motion at this time. I have ten days I guess for posttrial motion."
¶ 13. After making a similar inquiry of defense counsel, the court returned once again to plaintiff's counsel and explicitly inquired, "Anything further from the plaintiff?" Plaintiff counsel replied this time with, "I don't think so, Your Honor." Finally, to end the proceeding, the trial court stated, "Then we are concluded, done, the trial is over, end of trial. Clear. All right."
¶ 14. Brown now contends that the trial court erred in not automatically proceeding to take up an inquiry regarding punitive damages as outlined in Section 11-1-65 of the Mississippi Code without any prompting from counsel. He points out that the statute contains the mandatory term "shall" rather than "may," and contends that the prayer for punitive damages in his complaint together with his request for a punitive damage instruction was all that was required to compel the court to *696 take up the matter of punitive damages at the proper time. The trial court, when presented with that proposition in a posttrial motion hearing, determined that Brown had waived his right to pursue punitive damages when he failed to affirmatively assert that right when given the opportunity after the jury returned a verdict in his favor as to actual damages. Brown argues that the court should have automatically proceeded without further affirmative action on his part and that the issue was thereby preserved, both for posttrial consideration by the trial court and as error on appeal. Alternatively, Brown suggests that the court's failure to take up punitive damages affected a fundamental right in the fair conduct of the trial and, thus, ought to be noted by this Court under the plain error doctrine whether or not we find the issue procedurally preserved for appellate review. We disagree with both contentions.
¶ 15. It is, in our view, unnecessary to resolve the issue of (a) whether the trial court erred in failing to proceed directly into a Section 11-1-65 inquiry regarding punitive damages after the jury verdict and that an objection to the trial court's failure was unnecessary to preserve the error for appellate review in much the same manner that formal exception to an evidentiary ruling is unnecessary, or (b) whether the court was under no obligation to proceed unless affirmatively requested to do so by counsel. The result is the same. Even assuming for sake of argument that the court erred when it failed to take up punitive damages without any further prompting from Brown, it is a fundamental concept that errors committed in the conduct of the trial must be timely raised. Mitchell v. Glimm, 819 So.2d 548, 552(¶ 11) (Miss.Ct.App.2002) (citing Gatlin v. State, 724 So.2d 359, 369(¶ 43) (Miss. 1998)). One of the beneficial purposes of the rule is that it affords the trial court an opportunity to correct the error at a time when it can yet be dealt with and thereby avoid the unnecessary waste of limited judicial resources that would be required to retry the matter. Id. Thus, the price a litigant pays for failing to promptly raise a perceived error affecting the conduct of the trial at a time when corrective action remains a possibility is that the error is deemed to have been waived. Id.
¶ 16. In the case before us, the plaintiff had every opportunity, while the jury was still empaneled, to raise the issue of punitive damages. Though the trial court did not specifically mention punitive damages, the court did repeatedly inquire as to whether the plaintiff had other matters to be dealt with after the jury had returned its verdict on actual damages. In the face of such opportunity, counsel specifically declined to suggest the need for any further proceedings. It was only after that statement by counsel that the court declared the trial at an end and dismissed the jury, thereby ending the legal existence of the very fact-finding body charged by statute with determining the issues necessary to resolve a punitive damages claim. That failure to affirmatively raise the issue at this critical juncture constituted, in the view of this Court, a waiver of any right to later complain of the trial court's failure to undertake a punitive damages inquiry.
¶ 17. As to the alternative argument that the failure to proceed on punitive damages was plain error that this Court should consider even if we are convinced that it was not procedurally preserved for appellate review, we note that the plain error doctrine contemplates two basic concepts. A party is protected by the plain error rule when (a) he has failed to procedurally preserve an alleged error for appellate review but (b) the appellate court concludes that a substantial right of *697 the party is affected by the error. State Highway Com'n of Miss. v. Hyman, 592 So.2d 952, 957 (Miss.1991). In the case before us, the jury verdict for actual damages was intended to fully redress the plaintiff for all actual damages as shown by the proof. The recovery of punitive damages is not a fundamental right belonging to a plaintiff in civil litigation. Rather, it is a means by which the public interest is served by sanctioning a party for particularly offensive conduct both as punishment to the offending party and as an object lesson to others to avoid similar conduct in the future. American Life Ins. Co. v. Hollins, 830 So.2d 1230, 1243(¶ 50) (Miss.2002). No fundamental right belonging peculiarly to Brown is protected in the matter of a possible assessment of punitive damages since he has already been made whole by the verdict for actual damages, which is the declared purpose of a civil proceeding for damages. Id.
¶ 18. Because Brown has been made whole insofar as it lies within the power of the judiciary, we do not think the failure of the trial court to inquire into the appropriateness of punitive damages in the circumstances of this case raises an issue regarding the denial of fundamental rights of a litigant that is necessary to consider as alleged error under the plain error doctrine. We, therefore, find this alternative argument to be without merit.

III.

Credit for Settlement with Another Party
¶ 19. Brown's complaint alleges that all named defendants, including those with whom a pretrial settlement was reached that included the payment of the sum of $2,200, were acting in concert as to all the material factual allegations supporting his various theories of recovery. The complaint specifically states that the defendants should be held jointly and severally liable for those damages arising from their actions as outlined in Brown's pleadings.
¶ 20. It has long been the practice in Mississippi that, when there are multiple potential defendants liable on a claim and a settlement is reached with some, but not all, defendants, those defendants who proceed to trial and suffer a judgment against them are entitled to credit on that judgment for those amounts received in settlement from entities not party to the litigation. Southeastern Med. Supply, Inc. v. Boyles, Moak & Brickell Ins., Inc., 822 So.2d 323, 331-32 (¶¶ 32-33) (Miss.Ct.App. 2002). This practice has its origins in the notion that, though there may be multiple parties potentially liable for the plaintiff's injuries, a plaintiff is entitled to only one recovery of his damages. Dawson v. Townsend & Sons, Inc. 735 So.2d 1131, 1142(¶ 47) (Miss.Ct.App.1999).
¶ 21. By legislative enactment, the procedure for apportioning out monetary responsibility has been modified in certain instances where the plaintiff alleges that "fault" for his injuries is attributable to multiple entities. Miss.Code Ann. § 85-5-7 (Rev.1999). In such circumstance, the law now contemplates that the jury will apportion liability on a formula that includes consideration of the percentage of "fault" attributable to the various entities, whether or not some particular entity is a party to the litigation and without regard to the terms of any pretrial settlement. Miss.Code Ann. § 85-5-7(2) and (3) (Rev. 1999). However, for purposes of Section 85-5-7, the term "fault" is a defined term that specifically excludes "any tort which results from an act ... committed with a specific wrongful intent." Miss.Code Ann. § 85-5-7(1) (Rev.1999). Section 85-5-7(6) preserves the common law concept of joint and several liability "on all who consciously and deliberately pursue a common plan or *698 design to commit a tortious act...." Miss. Code Ann. § 85-5-7(6) (Rev.1999).
¶ 22. Based on the nature of Brown's claims, the proof appearing in the record, and the jury's verdict, we conclude this to be a case governed by Section 85-5-7(6) and, thus, not one that requires consideration of an apportionment of liability among the various alleged tortfeasors. Such a determination leaves us satisfied that the trial court properly applied long-standing principles of law regarding credits against the judgment designed to prevent multiple recoveries for the same injury.
¶ 23. Brown argues that the credit is inappropriate and cites as authority this Court's Dawson v. Townsend & Sons, Inc. decision. That case dealt with the issue of whether there should be an apportionment of liability between one alleged tortfeasor whose liability was based on "fault" as defined in Section 85-5-7(1) of the Mississippi Code and another alleged tortfeasor said to have acted deliberately. Dawson, 735 So.2d at 1133. That issue has nothing to do with the case now before us, since we deal with multiple defendants, all alleged to have acted purposely and in concert to injure Brown by improperly depriving him of the rightful possession of his vehicle and forcing him into a situation where he felt compelled to purchase a replacement vehicle on terms he could not afford. In situations where the allegation is that the offending parties have acted with "specific wrongful intent," Section 85-5-7 does not require an apportionment of liability. Instead, the statute preserves the common law principle that "all who consciously and deliberately pursue a common plan or design to commit a tortious act" shall be jointly and severally liable for the damages occasioned by that plan. Miss.Code Ann. § 85-5-7(6) (Rev.1999).
¶ 24. Brown attempts to argue factually that the settling defendants, no matter what the motivation for tendering a sum to settle the pending claims against them, could not logically have been a party to the act of conversion that was the foundation for the jury's verdict. He apparently means to contend that, on that basis, the settlement sums must have been based on damages arising from one of the other causes of action asserted in the complaint, thereby rendering it inappropriate to reduce this judgment, which is based solely on the theory of conversion.
¶ 25. There is certainly no factual basis to reach such a conclusion on the record before us. The complaint asserted joint and several liability against all defendants as to all the various claims and there is nothing in the record that would permit the settlement funds to be earmarked solely to one of the other alternate theories of liability originally advanced in Brown's complaint.
¶ 26. While there can be no doubt that North Jackson Nissan and Graham were jointly and severally liable for the entire verdict returned by the jury based on common law principles as preserved and carried forward in Section 85-5-7(6), there can also be no doubt that nothing in Section 85-5-7 has modified the common law principle that an injured party is entitled to but one recovery on his claim. Since this case was submitted to the jury on instructions to return a verdict reflecting the entirety of Brown's damages in conversion, the defendants suffering a judgment in that amount are entitled to credit for sums already received in partial satisfaction of that same claim by way of settlement with others alleged to have participated in causing the injury. Southeastern Med. Supply, 822 So.2d at 331-32. It was not error for the trial court to grant such credit upon proper motion that it do so.
*699 ¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.